HARRIS JAY GRISTON, Appellant, *v.* ALFRED STOUSLAND, Respondent.

Supreme Court, Appellate Term, First Department, January 25, 1946.

*Harris Jay Griston*, appellant in person.

*August G. Klages* and *John C. Dohm* for respondent.

SHIENTAG, J.  The action is by an attorney against a father for professional services rendered to his seventeen-year-old daughter in connection with criminal charges against her for forgery, petit larceny and attempted grand larceny.  The action is predicated upon an implied promise to pay arising out of necessaries furnished to the infant.  The defense, in substance, is that the father himself had retained an attorney who rendered suitable legal services to the infant in connection with the criminal charges against her.  In the course of the criminal proceedings the infant dismissed the attorney her father had furnished.  The Justice presiding in the Court of General Sessions permitted her to do this and temporarily designated a representative of the Legal Aid Society to act for her.  The day after such designation the infant retained the plaintiff as her attorney and he rendered certain services as such until the criminal proceedings were concluded.

This action was tried before a court and jury and at the close of the entire case the court dismissed the complaint on the merits, holding, as a matter of law, that the father had furnished suitable legal aid to his daughter.  We believe that an issue of fact was presented which should have been submitted to the jury.

(1) Legal services rendered to an infant, at her request, for her protection in connection with her prosecution for a criminal offense, are in the nature of necessaries for which the father, under appropriate conditions, may be held responsible (cf. *Elder*

v. *Rosenwasser,* 238 N. Y. 427; *Conant* v. *Burnham,* 133 Mass. 503).

(2) There is a close relationship of trust and confidence between attorney and client which creates special and unique features in the contract of employment between them. Because of this highly confidential relationship, a client has an absolute right to discharge his attorney (*Matter of Lydig,* 262 N. Y. 408, 409; *Matter of Krooks,* 257 N. Y. 329, 331; *People* v. *McLaughlin,* 291 N. Y. 480). There is no reason why this rule should not apply in the case of a seventeen-year-old girl; clearly, she has the right to an attorney of her own choice to defend her in a criminal prosecution.

(3) Although the client had the absolute right to dismiss the attorney furnished by her father and to accept one designated by the court, or to retain a lawyer of her own choice, such action on her part does not, in and of itself, render the father liable for the services of the attorney she has chosen. There is a distinction between the right of an infant to select her own lawyer and the right of that lawyer to hold the father liable for services rendered to the infant, where the father has already retained an attorney to represent his child. The two situations rest upon different fundamental legal conceptions.

A father may not be held liable for necessaries because, forsooth, an infant may not like the lodgings or the food or the articles of wearing apparel or the educational or medical facilities which her father has furnished (*Van Valkinburgh* v. *Watson,* 13 Johns. 480). A father, even in this modern age, is still the head of the household; he has an authority which ought not to be slighted. He has the paramount right to supervise the education and nurture of his children (*Loucks* v. *Dutcher,* 112 N. Y. S. 269). The father's judgment in such matters, while not absolute, will be respected by the courts, at least until it is shown that he was clearly not exercising a discretion at all, but a cruel caprice, that his action was arbitrary to the point of impairing the health or the well-being of his offspring or, in effect, constituted a neglect of the obligation imposed upon him by law for the support of his children (*Cromwell* v. *Benjamin,* 41 Barb. 558; *Tirrell* v. *Tirrell,* 232 N. Y. 224; *Welch* v. *Welch,* 261 App. Div. 371; 39 Am. Jur., Parent and Child, § 52, pp. 687–688; 46 C. J., Parent and Child, § 42, p. 1265).

To be sure, the rejection of a coat furnished by the father and the purchase of another by an infant who did not like his taste, is not altogether analogous to her selection of an attorney of her own choice and her rejection of the attorney proffered

by her father. She could buy the coat of her own choice, but the one who sold it to her could not ordinarily look to the father for payment. So she could choose her own lawyer, but the latter does not, by virtue of that circumstance alone, have the right to hold the father liable. The general rule of law is the same in the two situations; its application to the facts may, and often does, vary. Personal considerations must, of necessity, play a large part in the confidential relationship of attorney and client. In the last analysis, however, so far as the father's liability is concerned, the question is whether he neglected to furnish suitable necessaries; whether the infant was justified in dismissing the attorney he selected for her. Ordinarily, that is a question of fact, and we hold that it was so in this case (*Parker* v. *Tillinghast*, 9 N. Y. St. Rep. 510; *Stevens* v. *Hush,* 107 Misc. 353; *Lanyon's Detective Agency, Inc.,* v. *Cochrane,* 210 App. Div. 590).

The attorney furnished by the father was disliked by the infant. There is evidence that he had spoken critically of her in a prior civil litigation; that he had made no move to obtain her release on bail and allowed her to stay in jail for almost a month after her arrest; and that he had taken no steps to have her brought under the Youthful Offender Act, so that, even if guilty, she would not have to bear the stigma of a criminal record. (Code Crim. Pro., § 913-e *et seq.*)

Perhaps there was justification for this course, and the circumstances in connection therewith should have been permitted to be fully inquired into at the trial. In any event, it was for the trier of the facts to determine whether the father had furnished the appropriate legal assistance to his daughter and thus discharged the obligation imposed upon him by law. On the record in this case, the court below erred in deciding this question as a matter of law.

The judgment should be, accordingly, reversed and a new trial ordered, with $30 costs to appellant to abide the event.

HAMMER and HECHT, JJ., concur.

Judgment reversed, etc.